United States Court of Appeals for the Ninth Circuit is now in session. Good morning. I'm Judge Gould. I'm delighted to be sitting with my colleagues Judge Wynn and Judge Bennett. And we appreciate the gathering of all distinguished counsel during a time of a pandemic to help us out. And we really need your advocacy. And you get a slight pandemic bonus. And if any lawyer would like an additional minute or two to argue and you ask me, I will say yes. So without further discussion, I'll mention our docket here. The first case, first case on our docket sheet is a case called Sanchez v. Garland, number 20701034. And that case is being held in abeyance. The next case on the docket is Erdenbott v. Garland, 273288. That case is submitted on the briefs. The third case on the docket is De Leon v. Vasquez v. Garland, number 2170254. That case is also submitted on the briefs. So now we finally get to our argument docket. And the first case to be argued today is Perez v. Madison, that's number 191016471. For the appellant, we've got Mr. Randy Baker. And for the appellee, we've got Karen Bovernick. I apologize if I mispronounce names. So there we go. We have it set for 15 minutes per side. So Mr. Baker, if you'd like to make a rebuttal argument, the common practice will be to stop before all your time is used up on your first argument and hold some for rebuttal. Although I've already tipped my hand, the view's all your time up. And two minutes, you'll get that. Okay, well, why don't we proceed without further delay? Morning, your honors. I'm Randy Baker. I would like to reserve three minutes in rebuttal. This morning, I'd like to argue the first issue we raised in this case, which is that the state court unreasonably erred in finding that any gang evidence admitted in violation of the Sixth Amendment was a harmless error. Now, the state court did reach one piece of evidence, which was a police report providing information showing that the two predicate offenses needed to prove that the gang to which Mr. Perez belonged constituted a criminal street gang under California law. The police reports showing that were testimonial hearsay, that the perpetrators of those crimes were members of Mr. Perez's gang. So the court of appeal reversed that gang enhancement, finding that absent solid evidence, the perpetrators were members of the gang. It was not clear that the gang allegation could have been proven. Now, we, of course, agree with the court's finding that that police report was testimonial hearsay. And there was other testimonial hearsay we've addressed in the brief. But the one piece, in addition to that, that I want to bring to the court's attention today is a field identification card, also completed by a police officer, which purported to show that Mr. Perez was seen in the year 2006 with a gang tattoo, which the prosecution's gang expert testified it was a necessary proof that he was a member of the gang, that wearing that tattoo without being a gang member would have meant he would have been physically attacked and perhaps killed, that you're not allowed to do that. The card also showed that he was in the company of another member of the SSP gang to which he belonged. Now, since the state court did not reach that conclusion, since they simply assumed the field identification card was testimonial hearsay without reaching it, I need to, I'm requesting this court reach the issue. Under Tamplin v. Munez, this court looks at the question de novo because I'm not asking you to find the state court's decision unreasonable. They made no decision on the issue. Now, the field identification card qualifies as testimonial hearsay under this court's Gomez decision. Counsel, I'm sorry for interrupting you. Let's just assume for a moment that there's a testimonial hearsay problem. Can you address the question of prejudice? I'd be glad to, Your Honor. Identify specifically what testimonial hearsay statement resulted in prejudice and explain how it prejudiced him. Okay, so the two testimonial hearsay I'm maintaining or prejudicial were one, the police report, which stated that the perpetrators of the two predicate offenses were members of Mr. Perez's gang. And second, the field identification card establishing or purporting to establish that Mr. Perez was a gang member in 2006. Now, why is that prejudicial? The Supreme Court has identified five, the U.S. Supreme Court has identified five indicators of prejudice in cases in which the confrontation clause has been violated, Old and V. Kentucky and several other cases. The first indicator, of course, is what role did the testimonial hearsay, did the improperly admitted evidence play in the prosecution's case? Well, in this case, the police report showing that the gang members constituted the foundation of Officer Gallardo's opinion. Officer Gallardo opined that Mr. Perez killed to advance the street gang. That is the only express in unequivocal evidence the prosecution adduced that Mr. Perez killed for a purpose with judgment rather than out of impulse. Counsel, I mean, I don't really see how that can be true here. The entire interaction between your client and the person he killed, the evidence is strong that that was gang related. There were gang slurs going back and forth. When the incident appeared to have broken off, your client went back and stabbed the individual, and then there was evidence of what he did afterward indicating that he was acting with a gang motive. I mean, I don't understand what piece of evidence about this 2006 event provided materially stronger evidence of the gang relation here in view of the evidence, and that's even without getting to add the deference. Let me get to the strength of the It was clear Mr. Perez was a gang member. It was clear the conflict was gang motivated, and it was clear that Mr. Perez stabbed, fatally, Mr. Esparza. Now, of course, when the defense, the partial defense, is manslaughter, heat of passion, needless to say, of course, the defense acknowledges the killing. The theory of the defense in this case is not rebutted by the evidence your honor just cited. The theory of the defense, and I'm going to review the facts in some detail in a moment, the theory of the defense is the reason the conflict occurred in the first place is because it was provoked by Mr. Esparza. How? Mr. Esparza, of course, was a member of the rival Nortino gang. So let's go through the facts. Mr. Esparza walks into the gang tattoo on his face. He goes up to him and immediately starts tossing gang insults at him. Esparza then walks out of the restaurant, goes back to the car in which he arrived, takes out a red hat to signify his membership in the Nortino street gang, the rival gang. Both the prosecution and defense expert agreed this was intended as a provocation while he's outside. He tells his friend Mr. Lee, who also testifies in this case, I'm going to beat this guy up real quick. And by the way, Mr. Esparza, two months earlier, another witness had testified, had walked up to him, brandished a knife while the man was sitting in the car, demanded his wallet, took the wallet and walked away laughing. So Mr. Esparza, in this case, clearly expressed his there's evidence of it. He returns to the restaurant. He doesn't order food. That's not why he's in the restaurant. He's in the restaurant to fight Perez. So what does he do? He walks up to Perez and again begins hurling gang insults at him. Mr. Perez feels he has no alternative. And of course, we know since Esparza told his friend, I'm going to beat this guy up, that in had no alternative. Esparza was not going to let him leave that restaurant without fighting. Dr. Minagawa testifies without rebuttal that Perez reasonably felt his physical safety and indeed his life was in jeopardy. He challenges Esparza, let's go out and fight. They fight for about a minute. Esparza is the larger guy. He beats Perez up bloody, repeatedly hitting him in the head, dropping him to the ground. The two separate after the fight. After about a minute, Perez walks back to the restaurant or starts to with his friends. Esparza returns to the car in which he had arrived with Lee. Esparza starts mocking him to riding his manhood. You're a pussy. You got beat. Perez obviously is humiliated. He's been beat up in public by this fellow and he's bleeding. He goes back, apparently trying to retrieve some dignity or, you know, stand up to Esparza and grabs a pack of cigarettes from the car. Council, we're familiar with the facts of the case, but I guess I'm still not, I'm still understanding your argument as the connection between the purported testimonial hearsay evidence and the prejudice that results. I mean, whether the killing happened because of the defense expert's testimony that he simply snapped, the jury had that to consider. So in what way is the problematic testimonial statements that you identified really prejudiced him? There was ample other evidence that he was a gang member. So I'm not clear how you're making that connection to prejudice. Well, your honor, I mean, the gang membership is something the defense concedes and in fact is the predicate of the defense too, which is the point I'm trying to raise. Mr. Perez was given no choice but to fight. But let me address, I'm not addressing your point correctly. So let me address it directly. Why was the testimonial hearsay important? Well, the predicate of officer Gallardo's opinion, which was that he killed for purposes of the gang, was that it was a criminal street gang. If in fact he failed to prove that, if his evidence didn't satisfy it, as the state court found that it was reasonable to doubt that he could prove it, then we have to follow the Supreme Court under Oldham. We have to assume that the impeachment had its maximum possible value. Well, the maximum possible value of the facts on which officer Gallardo bases his opinion are invalid following the California Supreme Court in Gardley, which is really common sense. But counsel, sort of going back to my question, I think Judge Nguyen's question, I'm looking at page 34, for example, of the PCR court. Nearly all of the evidence on by officer Gallardo duplicated testimony of other witnesses, including defendant himself. Defendant's own testimony about gangs and his role in the crime was far more incriminating than officer Gallardo's opinions. Even if we were to accept your view as a possible, reasonable way of looking at the evidence, how can we overcome under AEDPA this particular finding by the PCR court? And then the next page, the PCR court talks about Dr. Minagawa essentially talking about the same things. How can we get past that with the AEDPA standard of review, even if we were to agree with you that this was an alternative way of looking at the value of the supposed illegitimately introduced hearsay? Well, Your Honor, I think under AEDPA we still apply BRECT. And so BRECT is a standard of substantial and injurious impact. I need not show that there was no substantial evidence. We win by showing that the testimonial hearsay, that it's erroneous admission, created a substantial injurious effect on the verdict. I'm going to go to the second. You win counsel, even given the PCR court's finding that the evidence, even assuming it violated the confrontation clause, that any error was harmless beyond a reasonable doubt. You don't have to show that that finding was unreasonable. I do. And I'd love to show you. First, I'm going to show you all those facts I mentioned. None of them, none of them are discussed in the court of appeals finding that proving Mr. Perez was a gang member, that proving the fight was gang oriented or gang clause and proving he fatally stabbed Esparza. None of those facts is addressed in the courts. Counsel, I'm going to mark. Thank you, Your Honor. Go ahead and use your time as you wish. And I'll give you a little time. Okay, thank you. I'm going to briefly get to the field identification card. So the field identification card shows Mr. Perez purportedly shows he was a member in 2006. That's extremely important because Perez stated the reason he joined the gang was in 2007, an Ortino slashed his throat nearly killed him for simply appearing to be a member of the rival Sereno gang. So he testified that he joined that gang, not because he wanted to be a criminal, but because he feared for his life. And he thought in his words, they would have his back. The other reason that piece of evidence is important is because Mr. Perez testified that the reason he joined the gang was self defense. If he's lying, if his testimony is false, then of course, the defense collapses. That piece of evidence is evidence that authorizes the jury to find he's a liar, that he's committing perjury in front of them. And he shouldn't be believed. If the defendant shouldn't be believed, of course he loses. If that evidence is not in front of the jury, then that opportunity for the prosecution to impeach him, which by the way, is cited by the prosecutor in closing saying it's not true that he wasn't a member that the prosecutor knows and makes a point. He joined the gang because he's a criminal. And if that is credited by the jury, and then he's a liar, he loses. I'll reserve the rest of my time. Okay. Free planning just of the clerk. Three minutes on the clock. It was down to one second. Oh, we're over. I'm not sure. I don't think there was any time to reserve. But I'll give you three minutes rebuttal. Thank you very much. Capelli's counsel could proceed. May it please the court, Karen Bovarnik, for respondent. The state court here carefully examined not only the legal issues, but was thorough in its consideration of the facts. How do we know this? Well, we know that they carefully considered the law because the state court reversed the gang enhancement as violating the defendant's confrontation rights. And we know that the court carefully considered the facts, particularly in reaching its Chapman harmlessness finding because the state court reviewed the record thoroughly and then determined that Officer Gallardo's testimony was harmless under Chapman because each fact established by his testimony relevant to the murder was established by other evidence. And what was that other evidence? Primarily defendant's own testimony and that of his own expert, Dr. Negawa. Um, I mean, the record is before the court that in terms of the tattoos, um, the defendant admitted, um, not only that he was a Sereno gang member, um, but that he had gang tattoos, um, that he was like a walking billboard. One of the witnesses called him. Um, and I think it may have been actually, uh, Dr. Negawa. Um, I don't know the ER site. I know it's 9RT1363 where he admitted, you know, he got these tattoos because they were gang tattoos and they were prominent. There was no issue about that in terms of whether joining a gang means you want to, um, you want to aggressively commit crimes or you're acting in self-defense, which was not the issue. The issue here was heat of passion. It wasn't, um, self But I mean, the facts were that, um, as the state court reasonably found that the defendant was stabbing, uh, the victim as the victim was in a car trying to, where the driver was trying to pull away. He was smiling before, during, and after this crime, especially after the crime. Giddy, as, as the, um, one of the witnesses described him, he didn't say giddy, but he said basically after the crime, he was smiling like somebody who got away with something. Um, it was, I mean, the issue, this field, the other thing is the field, um, the, uh, field identification cards. I, I don't remember, uh, that actually being in the briefs but, um, uh, but it doesn't undermine the state court's Chapman finding. Um, it, it's just overwhelming as, as the state court found it's, I mean, there were a lot of witnesses to this gang related murder who talked about, um, uh, the defendant being a gang member. Daniels talked about it. Um, uh, every witness in the, in the, uh, Jack in the Box talked about it, but, um, but primarily the defendant talked about it and his expert talked about it. Um, unless there are any questions, um, I'm happy to answer any questions. Otherwise I'm happy to submit. I have one question. Yes. Am I correct? That the U.S. Supreme Court has said that we review harmless error determinations under the same standard requiring that for relief, they would have to be objectively unreasonable? Correct. That, well, yes. Um, it's a two-step, but in this case, yes, Chapman, the Chapman finding has to be an unreasonable application. And, uh, and then, uh, and then on top of that, you have the substantial injurious Brecht standard, but that, um, I mean, essentially in this case where they're, they're almost the same, they wouldn't be the same in a situation where, uh, the state court erred in making its harmlessness finding, but here that Chapman finding is, is, uh, is reason is incredibly reasonable. Um, so yeah. Did that answer the question? That answered my question. Yes. Okay. Then if you don't have further argument at this time, we'll let Mr. Baker do rebuttal. Um, you know, as I'd like to point out, there are two conditions, either of which, um, require reversal of a state court finding under AEDPA. The first is, um, a ruling inconsistent with controlling Supreme Court authority. As I explained, the Supreme Court in Olden and several other cases has held that harmless error is determined in a confrontation clause case by examining the error under five indicators, none of which were addressed by the, um, Washington, uh, California's, uh, Court of Appeal. The importance of the evidence to the case disregarded whether or not it's cumulative disregarded, whether or not it's corroborated or contradicted disregarded, whether or not there was an opportunity to cross-examine the hearsay affiance disregarded. There wasn't. And finally, the strength of the prosecution's case, none of the evidence of provocation I mentioned to the court earlier was addressed in the court's opinion, not to mention the undisputed factors showing Mr. Perez was extremely vulnerable to provocation. 16 years old, the U.S. Supreme Court and Dr. Minigaw was a incomplete brain development. Counsel, I'm sorry to interrupt your rebuttal, but when you say the PCR court didn't even discuss it, wasn't the PCR court's finding that the superior court didn't even need to, wouldn't even have needed to submit the manslaughter heat of passion, um, defense to the jury because there wasn't sufficient evidence to support it. Isn't that a discussion of the efficiency of the provocation evidence and the heat of passion? Well, your honor is true. It did make that finding. It did not make it in the context of the harmless error here, but you're right. And that finding also was based on the same disregard of these circumstances showing Mr. Esparza's provocation. For example, most notably, it omitted the part where he told his friend, I'm going to go beat up Perez. It omitted the part about, um, the brain development of a 16 year old. It omitted the part that, um, without contradiction, both, uh, Minigaw and Gallardo agreed that, uh, Perez had done nothing to provoke the fight, that it was Esparza who was provoking it. All of that was disregarded. It was disregarded that he suffered from complex trauma. Dr. Minigaw's diagnosis, uh, complex trauma, which undermines your ability to, um, exercise restraint and a rebuttal from another psychologist saying, you know, that was an incompetent diagnosis. So, um, I don't think the court's opinion is based on the facts and it doesn't apply olden. And I'm afraid I'm running out of time. Um, yeah, this case shall now be submitted, but before we close, I want to again, reiterate that we appreciate the council, each of you being here during a pandemic. And we also appreciate and have a need for the type of excellent advocacy that you've given us here on behalf of your clients. So thank you both. The case shall now be submitted. Thank you. Thank you, Your Honor.
judges: GOULD, NGUYEN, BENNETT